# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:22-cv-20824-GAYLES/TORRES

**SX Holdings, LLC**, et al.,

     Plaintiffs,

v.

**iContainers USA, Inc.**, et al.,

     Defendants.

_____/

## ORDER

**THIS CAUSE** comes before the Court on the Defendant iContainers Solutions SL's Motion to Dismiss the Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction, or in the alternative, for Failure to State a Cause of Action (the "Motion"). [ECF No. 100]. The Court has considered the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is **GRANTED**.

## BACKGROUND[1]

### I.    Factual Background

This case arose from a dispute over unexpected shipping fees between the Plaintiffs SX Holdings LLC ("SX Holdings") and Mohamed Mahmoud ("Mahmoud," collectively the "Plaintiffs") and the Defendants iContainers USA, Inc. ("ICUSA") and iContainers Solutions SL ("Solutions"). Solutions is a shipping company headquartered in Barcelona, Spain, that arranges the shipment of goods in Europe. [Font Decl. ¶¶ 3–4]. Solution's subsidiary, ICUSA, is

---

[1] For the Factual Background and Discussion sections, the Court relies in part on the declarations of Carlos Font ("Font Decl."), Chief Executive Officer of Solutions, and Carlos del Corral ("del Corral Decl."), Director of Solutions and Global Operating Director. [ECF Nos. 100-2, 100-3].

headquartered in Coral Gables, Florida, and arranges the shipment of goods originating in or destined for the United States. *Id*. ¶¶ 5–7. The Plaintiffs allege in their Amended Class Action Complaint ("Amended Complaint") that Solutions "conducts its business in the United States through its agent," ICUSA. [ECF No. 92 ¶ 21].

According to the Amended Complaint, SX Holdings needed to ship goods from China to the United States, and Mahmoud needed to ship goods from the United States to Egypt. *Id*. ¶¶ 43, 69–70. Each Plaintiff searched online for international shipping companies and found the Defendants' joint iContainers website. *Id*. ¶¶ 43, 69. iContainers' advertised door-to-door international shipping model and all-inclusive rates appealed to the Plaintiffs as it appeared easy and user-friendly. *Id*. ¶¶ 9, 11, 69. The Plaintiffs used the website to input their shipping requirements, and the website's "quote generator" provided the Plaintiffs with their respective shipment costs. *Id*. ¶¶ 44–46, 71–73. The Plaintiffs allege, however, that the Defendants knew or should have known that the "quote generator" was "woefully inaccurate or inadequate for generating an accurate quote." *Id*. ¶¶ 46, 73. The Plaintiffs allege that the Defendants used the quote generator to lure customers with an attractive cost, while knowing or having reason to know, that the quote did not include "reasonably anticipable expenses." *Id*. ¶¶ 68, 107.

After paying the quoted price, the Plaintiffs claim that the Defendants required them to pay additional fees to move their goods including, among others, customs fees, transportation costs, and destination charges. *Id*. ¶¶ 53–55, 62, 76. The Plaintiffs also allege that the Defendants delayed moving their goods, resulting in the loss of business for SX Holdings and additional storage fees for Mahmoud. *Id*. ¶¶ 66, 83. Ultimately, SX Holdings was able to secure its goods from China. *Id*. ¶ 63. However, Mahmoud, despite paying the Defendants' fees, has not been able to obtain the release of his goods in Egypt. *Id*. ¶ 106.

## II.     Procedural History

On March 18, 2022, the Plaintiffs filed their Class Action Complaint, on behalf of themselves and all others similarly situated, against the Defendants (the "Complaint"). [ECF No. 1]. On August 11, 2022, Solutions filed a Motion to Dismiss the Complaint, [ECF No. 45], which was denied as moot when the Court granted the Plaintiffs leave to amend, [ECF Nos. 89, 91]. On April 30, 2024, the Plaintiffs filed their Amended Complaint raising four counts against the Defendants: (1) Violation of the Florida Deceptive and Unfair Trade Practices Act, (2) Breach of Contract, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing, and (4) Unjust Enrichment. [ECF No. 92]. On June 3, 2024, Solutions filed the instant Motion, arguing that the Court lacks personal jurisdiction over it and, in the alternative, that the Plaintiffs fail to state a claim. [ECF No. 100].

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a claim against it for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "A Plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When a defendant submits evidence to challenge personal jurisdiction, "the burden traditionally shifts back to the [P]laintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). Then, the Plaintiff must "affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in its complaint." *Kernel Records Oy v. Mosley*, No. 09-cv-21597-TORRES, 2010 WL 2812565 at *3 (S.D. Fla. July 5, 2010). "Where the [P]laintiff's complaint

and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the [P]laintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and still must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits," *Madara*, 916 F.2d at 1514.

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). First, the court must "determine whether the exercise of jurisdiction is appropriate under" the state's long-arm statute. *Id*. Second, the court must determine whether exercising personal jurisdiction over the nonresident defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id*. That is, the court must determine whether the nonresident defendant has such minimum contacts with the forum such that exercising personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Id*.

## DISCUSSION

Solutions argues that the Plaintiffs cannot establish general or specific personal jurisdiction over it. The Court addresses each argument in turn.

## I.      Florida's Long-Arm Statute

Florida's long-arm statute provides in pertinent part:

(1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state . . . .

. . . .

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject

4

to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(1)(a), (2). Under Florida's long-arm statute, a defendant may be subjected to either: (1) general personal jurisdiction—jurisdiction over any claims against a defendant if the defendant engages in "substantial and not isolated activity" in Florida; or (2) specific personal jurisdiction—jurisdiction in suits arising out of or relating to the defendant's contacts with Florida. *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1343 (S.D. Fla. 2017) (quoting Fla. Stat. § 48.193(1)(a), (2)). "Irrespective of the method, Florida's long-arm statute is to be strictly construed . . . [and] federal courts are required to construe it as would the Florida Supreme Court." *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1358 (S.D. Fla. 2019) (internal citations and quotations omitted).

A.   General Personal Jurisdiction Pursuant to Florida Statute § 48.193(2)

The Plaintiffs argue that the Court may exercise general personal jurisdiction over Solutions based on its agency relationship with ICUSA. [ECF No. 92 ¶ 24]. The Court disagrees.

General personal jurisdiction may be exercised over a corporate defendant based on its: (1) place of incorporation or (2) principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Outside of these contexts, courts only exercise general personal jurisdiction over a foreign corporate defendant in "exceptional case[s]." *Daimler AG*, 571 U.S. at 139 n.19. "Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002). However, when "the subsidiary is merely an agent through which the parent company conducts business . . . without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent . . . for purposes of asserting personal jurisdiction." *Id.* (internal citation and quotation removed).

5

Courts exercise general personal jurisdiction over the foreign company defendant when that defendant has operational control over its subsidiary. *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12–cv–755–T–26TBM, 2012 WL 5830590, at *3 (M.D. Fla. Nov. 16, 2012). Operational control occurs where the defendant has "day-to-day control of the internal affairs or basic operations of the subsidiary." *Id*. The level of control over the subsidiary must be "high and very significant," and if there is a "semblance" of independence from the parent company, jurisdiction will not attach. *Enic, PLC v. F.F. S. & Co., Inc*., 870 So. 2d 888, 891–92 (Fla. 5th DCA 2004); *Meier*, 288 F.3d at 1272.

Facts which generally fail to establish operational control "include[] [the] sharing of directors, . . . the parent . . . render[ing] directives and approv[ing] of major policy decisions, enjoying a unified or global strategy and goals, cross-selling promotional materials, and performing services for one another." *Yellow Pages Photos, Inc.*, 2012 WL 5830590, at *4 (internal citation and quotation removed). "The same can be said of the sharing of a website . . . and the use of the same generic trademarks." *Unitedhealthcare of Fla., Inc. v. Am. Renal Associates Holdings*, Inc., No. 16-81180-CIV, 2017 WL 1832436, at *7 (S.D. Fla. May 8, 2017). In addition, executives "of a parent corporation often directly participate in the management of the subsidiary . . . [and] [t]he mere intermingling of officers and directors does not imply that one corporation acts as a puppet of the other." *See Miller v. Toyota Motor Corp*., No. 607CV-1358ORL-19DAB, 2008 WL 516725, at *5 (M.D. Fla. Feb. 22, 2008). Finally, "courts do not consider statements in websites . . . reliable evidence that the parent exercises operational control necessary to confer personal jurisdiction." *Heidbrink v. ThinkDirect Mktg. Group, Inc*., No. 8:14-CV-1232-T-30AEP, 2014 WL 3585698, at *3 (M.D. Fla. July 21, 2014) (internal quotation removed).

The Amended Complaint contains an extensive list of allegations to support the Plaintiffs' claim that Solutions has operational control over ICUSA. [ECF No. 92 ¶¶ 26–37]. The Plaintiffs allege that (1) the Defendants share directors; (2) the Defendants share a website; (3) the Defendants share a trademark that is owned by Solutions; (4) a global executive team or officer makes decisions regarding ICUSA's finance, budgeting, marketing, sales, pricing, costs, revenue, and strategy; (5) Solutions reaps revenue from ICUSA; (6) ICUSA "repatriates portions of its operating income" to Solutions; (7) the Defendants share costs based on the "usage of services" for marketing, website, internet usage and security, finance, and pricing consultation; (8) ICUSA invoices Solutions for 3rd party support secured by ICUSA;  (9) ICUSA has a higher operating income than Solutions; (10) the Defendants operate in unison; (11) ICUSA only conducts business for Solutions; (12) the Defendants share the Coral Gables office; and (13) the Defendants do not distinguish between Solutions and ICUSA on their shared website. *See id*; [ECF No. 112 at 23–24]. The Plaintiffs argue that these facts are sufficient for this Court to exercise general personal jurisdiction over Solutions pursuant to Florida Statute § 48.193(2). The Court does not agree.

Courts have consistently held that if there is a semblance of independence between the parent company and the subsidiary, then jurisdiction will not attach. *Enic, PLC v. F.F. S. & Co., Inc*., 870 So. 2d 888, 892 (Fla. 5th DCA 2004); *Meier*, 288 F.3d at 1272. Solutions' unrebutted evidence establishes much more than a semblance of independence. These facts include, *inter alia*, (1) Solutions has not had any contact with the Plaintiffs; (2) Solutions had no role with the shipments at issue in the suit; (3) the Defendants have separate bank accounts, books, and records; (4) and the entities file taxes separately. [Font Decl. ¶¶ 9–11, 16]. For these reasons alone, the Court cannot exercise general personal jurisdiction over Solutions.

As noted above, the sharing of directors, websites, and trademarks is not usually sufficient to establish operational control. *Yellow Pages Photos, Inc.*, 2012 WL 5830590, at *4; *Unitedhealthcare of Fla., Inc.*, 2017 WL 1832436, at *7. Similarly, a parent company making policy decisions and even "directly participat[ing] in the management of the subsidiary" does not necessarily establish operational control. *See Yellow Pages Photos*, *Inc.,* 2012 WL 5830590, at *4; *Miller*, 2008 WL 516725, at *5. As a result, the Court finds that even if Solutions made some major policy decisions for ICUSA, it does not amount to operational control here. [ECF No. 92 ¶¶ 29–30].

 Regarding revenue, the Plaintiffs state that "[ICUSA's] operations *in Miami* dominate[] [Solutions'] total revenue." [ECF No. 112 at 26]. However, when asked in his deposition what percentage of Solutions' total revenue comes from ICUSA, del Corral responded that "[Solutions] have operations and revenue, and [ICUSA] have their operations and their revenues." [ECF No. 82-2, del Corral Tr., 15:17–15:23]. In his Declaration, del Corral stated that ICUSA does not "repatriate[] portions of its operating income" to Solutions, but "merely pays" its "pro rata share" of services. [del Corral Decl. ¶ 8]. Given that the Plaintiffs do not rebut this statement, the Court accepts it as true. *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-CIV-21897, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013) ("When a [P]laintiff proffers no competent evidence to establish jurisdiction in opposition to the denials of the jurisdictional allegations contained in the defendant's affidavit, a district court may find that the defendant's unrebutted denials [are] sufficient to negate the Plaintiffs' jurisdictional allegations."). Even so, one company paying another company for services would indicate that the companies are separate entities.

The Plaintiffs' allegation that ICUSA has a higher operating income than Solutions has no relevance to the operational control analysis. The Plaintiffs' remaining allegations, that the

Defendants operate in unison and that ICUSA only conducts business for Solutions, are conclusory and insufficient to establish operational control. Moreover, to the extent the Plaintiffs rely on statements made on Defendants' website, this is not reliable evidence of operational control. *Heidbrink*, 2014 WL 3585698, at *3 (finding that evidence gleaned from websites is not reliable). Accordingly, the Court finds that the Plaintiffs fail to meet their burden to establish general personal jurisdiction over Solutions.[2]

B.   <u>Specific Personal Jurisdiction Pursuant to Florida Statute § 48.193(1)(a)</u>

The Plaintiffs allege that the Court has specific personal jurisdiction over Solutions under § (1)(a) of the long-arm statute based on the actions of its agent, ICUSA. The Court disagrees. As the Court has already found, the Plaintiffs fail to establish that Solutions has operational control over ICUSA. *Supra* § I.A. *See Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1241–50 (S.D. Fla. 2015) (denying the exercise of specific personal jurisdiction after the Plaintiff failed to show that the "parent entity exercise[d] operational control over [the] subsidiary.").

Finally, the cases cited by the Plaintiffs in support of their argument are distinguishable from this case. In those cases, courts exercised specific personal jurisdiction over the parent company because the company financed, or was directly involved in, the transaction that gave rise to the lawsuit. *See Sehringer v. Big Lots, Inc.*, 532 F. Supp. 2d 1335,  1347-49 (M.D. Fla. 2007)

---

[2] In addition, this case is distinguishable from the cases cited by the Plaintiffs to support general personal jurisdiction. In those cases, general personal jurisdiction attached because the subsidiary's purpose was to support the parent's business, or the foreign defendant directly solicited business in Florida. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357 (11th Cir. 2006) (granting jurisdiction over resort parent company  because the subsidiary, a booking and advertising agent in Florida, "operate[d] solely for the purpose of" supporting the parent company); *Al-Babtain v. Banoub*, No. 8:06-cv-1973-T-30TGW, 2008 WL 3982880, *5 (M.D. Fla. Aug. 26, 2008) (granting jurisdiction over parent company because the subsidiary was only created to "achieve the purpose of the parent corporation in the United States and Florida."); *Pownall v. Cunard Line Ltd. Co*., No. 06-22836-CIV, 2007 U.S. Dist. LEXIS 99382, at *20-21 (S.D. Fla. Aug. 3, 2007) (granting jurisdiction over foreign defendant, a tour operator, because it negotiated extensively with cruise lines in Florida).

(exercising personal jurisdiction over the parent company because, *inter alia*, the parent company's compensation package for subsidiary employees was the basis of the lawsuit); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1228-40 (S.D. Fla. 2021) (finding personal jurisdiction over the parent company because the Plaintiff sufficiently alleged that the company itself misrepresented the safety of its vehicles to customers); *Rogers v. Omni Sol.*, No. 10-21588-CIV, 2010 WL 4136145, at *7 (S.D. Fla. Oct. 19, 2010) (finding personal jurisdiction over parent company because the company "had knowledge that its product would be used in Florida, negotiated a contract with a Florida resident, and shipped the product directly to . . . Florida."). In this case, Solutions was not a party to the contract at issue, was not involved in the Plaintiffs' shipments, and has had no communication with the Plaintiffs. [ECF No. 100 at 11, del Corral Decl. ¶ 9]. Consequently, the Court cannot exercise specific personal jurisdiction over Solutions.[3]

## II.     Due Process and Minimum Contacts

Because there is no basis for exercising personal jurisdiction over Solutions, "the Court need not address the second inquiry: whether the exercise of jurisdiction comports with due process." *Moreno v. Carnival Corp.*, 488 F. Supp. 3d 1233, 1239 (S.D. Fla. 2020) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam)). This is because "the Due Process Clause imposes a more restrictive requirement than does Florida's Long-Arm Statute." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1342 (S.D. Fla. 2014) (internal quotation and citation omitted). Therefore, "finding a defendant is not subject to jurisdiction under Florida law means that jurisdiction is also inappropriate under the Due Process Clause." *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1363 (S.D. Fla. 2019) (citation omitted).

---

[3] As the Court finds that it does not have personal jurisdiction over Solutions, the Court does not address Solutions' argument that the Amended Complaint should be dismissed for failure to state a claim.

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     Defendant Solutions' Motion to Dismiss the Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction, [ECF No. 100], is **GRANTED**.

2.     Plaintiffs' claims against Solutions in their Amended Complaint, [ECF No. 92], are **DISMISSED without prejudice**.

3.     Solutions is **DISMISSED** as a party to this action.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of March, 2025.

_____

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

11